**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LEANDRO ALVAREZ, Individually and on behalf of all others similarly situated,

Plaintiff,

v.

PACIRA BIOSCIENCES, INC, DAVID STACK, FRANK D. LEE, ANTHONY MOLLOY, AND CHARLES A. REINHART III

Defendants.

Case No: 2:25-CV-00322-SRC-CLW

**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

CLASS ACTION

## TABLE OF CONTENTS


I. NATURE OF THE ACTION ..... 1

II. JURISDICTION AND VENUE ..... 2

III. PARTIES ..... 3

IV. SUBSTANTIVE ALLEGATIONS ..... 6

- A. Background ..... 6
- B. The Relevant Patent ..... 8
- C. The Relevant Lawsuits ..... 8
- D. Pacira's Public Discussions of the Lawsuits Before the Class Period ..... 11
- E. The June 6, 2023, "Claim Construction" Opinion ..... 14

V. FALSE AND MISLEADING STATEMENTS AND OMISSIONS ..... 16

VI. THE TRUTH EMERGES ..... 34

VII. LOSS CAUSATION AND ECONOMIC LOSS ..... 38

VIII. NEITHER THE PSLRA SAFE HARBOR NOR THE BESPEAKS CAUTION DOCTRINE APPLIES ..... 39

IX. PLAINTIFF'S CLASS ACTION ALLEGATIONS ..... 40

X. COUNTS ..... 43

XI. PRAYER FOR RELIEF ..... 46

XII. JURY TRIAL DEMANDED ..... 47

Lead Plaintiff Western Pennsylvania Teamsters and Employers Pension Fund ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Amended Complaint against Defendants Pacira BioSciences, Inc. ("Pacira" or "Company"), David Stack ("Stack"), Frank D. Lee ("Lee"), Charles A. Reinhart, III ("Reinhart"), and Anthony Molloy ("Molloy"), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Pacira, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I. NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired Pacira common stock between June 26, 2023, and August 8, 2024, inclusive ("Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

2. In a fight to protect Pacira's "495 patent" for Exparel, Pacira's core product, from being invalidated and having a generic player enter the market, competing with the Exparel drug delivery system, Defendants received an adverse ruling from a court that materially reduced Pacira's chances of defending its 495 patent. On June 6, 2023, after a Markman hearing, the District Court rejected Pacira's construction of key terms in its 495 patent, handing a claim

construction victory to eVenus, the generic seeking to enter the market. The adverse decision materially lowered Pacira's chances of avoiding having its 495 patent declared invalid at trial.

3. Knowingly or recklessly disregarding this material, adverse information, Defendants continued to speak publicly about the upcoming trial on the 495 patent, expressing confidence in the outcome of Pacira's patent defense against eVenus's challenge. After the June 6, 2023, adverse ruling on claim construction, however, Defendants' statements about the upcoming trial, were materially false and misleading. Having chosen to speak about the patent litigation, Defendants were duty-bound to also discuss the negative adverse information about the claim construction ruling that did not fairly align with the confidence they expressed about defending the 495 patent.

4. Indeed, when on August 9, 2024, following trial, the court in the 495 patent litigation ruled against Pacira, invalidating the 495 patent for obviousness and anticipation, Pacira's stock price declined by 47%, from a closing price of $22.36 per share on August 8, 2024, to a closing price of $11.70 on August 9, 2024, harming investors.

## II. JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## III. PARTIES

9. Plaintiff Western Pennsylvania Teamsters and Employers Pension Fund, as set forth in its previously filed certification, (Dkt. No. 9-5), incorporated by reference herein, purchased Pacira securities during the Class Period and was economically damaged thereby.

10. Pacira BioSciences, Inc. is a Delaware corporation with principal executive offices located at 5 Sylvan Way, Parsippany, NJ 07054. The Company frequently communicates with investors. During the Class Period, the Company's common stock traded on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "PCRX."

11. Defendant David Stack was the Chairman of Pacira's Board of Directors and its Chief Executive Officer ("CEO") from before the start of the Class Period through January 1, 2024. Stack continued at Pacira in a consulting role through August of 2025. Stack signed the following quarterly and annual reports, as well as certifications for each report: for the August 2, 2023, Form 10-Q for the period ended June 30, 2023 ("2Q23 10-Q"); the November 2, 2023, Form 10-Q for the period ended September 30, 2023 ("3Q23 10-Q"); and the February 29, 2024, annual report for the period ended December 31, 2023 ("2023 10-K").

12. Defendant Frank D. Lee ("Lee") was the CEO and a member of Pacira's Board of Directors beginning January 2, 2024, and through the end of the Class Period. Lee signed the following quarterly reports, as well as certifications for each report: the May 7, 2024, Form 10-Q for the period ended March 31, 2024 ("1Q24 10-Q"); and the July 30, 2024, Form 10-Q for the period ended June 30, 2024 ("2Q24 10-Q")

13. Defendant Charles A. Reinhart, III, was Pacira's CFO during the Class Period and until October 2024. Reinhart signed the following quarterly and annual reports, as well as certifications for each report: the 2Q23 10-Q; the 3Q23 10-Q; the 2023 10-K; the 1Q24 10-Q; and 2Q24 10-Q.

14. Defendant Anthony Molloy ("Molloy") was, at all relevant times, Pacira's Chief Legal and Compliance Officer.

15. Defendants Stack, Lee, Reinhart, and Molloy are collectively referred to herein as the "Individual Defendants."

16. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

17. For the quarterly and annual statements signed by Defendants Stack, Lee, and/or Reinhart III, as described *supra*., each Defendant signed Certifications for the statements certifying that:

> (a) I have reviewed this annual report on Form [10-K or 10-Q] of Pacira BioSciences, Inc.
>
> (b) Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> (c) Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;
>
> (d) The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:
>
>> 1) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;
>>
>> 2) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;
>>
>> 3) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and
>>
>> 4) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report)

> that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting.

18. Further, in each quarterly and annual statement during the Class Period, Defendants signed SOX certifications stating that "this Quarterly Report on Form [10-Q or 10-K] of Pacira BioSciences, Inc. for the [quarter or year] ended _______________, fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that the information contained in this report fairly presents, in all material respects, the financial condition and results of operations of Pacira BioSciences, Inc. at the dates and for the periods indicated

19. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

20. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Pacira under *respondeat superior* and agency principles.

21. Defendant Pacira and the Individual Defendants are collectively referred to herein as "Defendants."

## IV. SUBSTANTIVE ALLEGATIONS

### A. Background

22. Pacira is a pharmaceutical company committed to developing and providing non-opioid pain management and regenerative health solutions. According to Pacira, it is the:

> industry leader in our commitment to non-opioid pain management and providing non-opioid pain management options to as many patients as possible to redefine the role of opioids as rescue therapy only…. Our long-acting, local analgesic EXPAREL® (bupivacaine liposome injectable suspension) utilizes our unique pMVL drug delivery technology that encapsulates drugs without altering their molecular structure and releases them over a desired period of time.

23. Pacira offers three commercial-stage non-opioid treatments: Exparel, Zilretta, and Iovera. Exparel is by far Pacira's most important product, accounting for approximately 80% of Pacira's revenues during the Class Period. The FDA approved Exparel for use in 2011, and it became commercially available in 2012. Since then, according to Defendant Lee, speaking during the February 29, 2024, earnings conference call, Exparel had been provided to at least 14 million patients. In the 2Q23 10-Q, the Company stated that "we are primarily dependent on the commercial success of EXPAREL and ZILRETTA."

24. Exparel controls delivery of bupivacaine, a non-opioid pain reliever, releasing the drug over time. Pacira holds no patents on bupivacaine. Rather, its Exparel patents were on the manufacture and use of Exparel's delivery system. During the Class Period, Exparel sales comprised 80% of Pacira's revenue. Protecting the validity of its patents related to Exparel—keeping generic manufacturers off the market—therefore, was a core operation of the Company.

25. Exparel's delivery system is comprised of multivesicular liposomes ("MVLs"). A liposome "is a microscopic structure consisting of a phospholipid bilayer encapsulating an aqueous core." Due to their hydrophilic and hydrophobic properties and biodegradability, liposomes are often used as drug delivery systems for a wide variety of drug products. A multivesicular liposome is a type of liposome in which one vesicle[1] contains one or more smaller nonconcentric compartments, or vesicles, each separated by lipid bilayers. Each particle is composed of a honeycomb-like structure of numerous internal aqueous chambers containing encapsulated bupivacaine. That structure allows for increased stability and sustained release of

---

[1] A vesicle is a small, membrane-bound sac that functions as a transport container within a cell or as a blister on the skin. In cells, vesicles are crucial for moving substances, like proteins and lipids, between different organelles or to the cell's exterior.

the drug from the vesicles, as a breach in the external layer of the MVL causes a release of the drug from only the first layer of vesicles, and redistribution of the drug within the inner vesicles without release. By nature of its MVL structure, Exparel is a long-acting formulation that increases the duration of local anesthetic action. Exparel is a targeted injection working directly at the surgical site. Multiple new uses for Exparel have been approved since 2011.

**B. The Relevant Patent**

26. On June 15, 2021, the United States Patent and Trademark Office ("USPTO") granted Pacira patent number 11,033,495 ("495 patent"). The 495 patent is entitled "Manufacturing of Bupivicaine Multivesicular Liposomes." Pacira wrote in its 2023 10-K that the 495 patent "claims composition of EXPAREL prepared by an improved manufacturing process." The 495 patent covers what Pacira called a new, more stable Exparel. Specifically, according to the 2023 10-K, the 495 patent discloses "new and improved commercial scale manufacturing processes for making bupivacaine encapsulated [MVLs]," and details that "[t]he newly developed processes provide up to 5 folds increase in final product volume as compared to the current process." That is, Pacira had developed manufacturing a larger batch Exparel, with increased stability while stored before use. Pacira originally manufactured Exparel using a 45 liter process but had developed a 200 liter process.

**C. The Relevant Lawsuits**

27. In August 2021 eVenus Pharmaceutical Laboratories, Inc. ("eVenus") filed an Abbreviated New Drug Application ("ANDA") with the FDA seeking approval for and commercialization of generic Exparel.

28. On November 8, 2021, Pacira disclosed publicly for the first time that in August 2021, it had sued eVenus,[2] alleging that eVenus had violated Pacira's 495 patent and seeking an injunction to prevent eVenus from manufacturing, using, or commercializing generic Exparel ("2021 lawsuit").[3]

29. eVenus defended the 2021 lawsuit, asserting, among other defenses, the 495 patent's invalidity for "obviousness" and "anticipation."

30. With respect to obviousness, pursuant to the U.S. Patent Act, 35 U.S.C. §103:

> a patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole, would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.

31. Essentially, if the invention is too similar to what already exists to a "person having ordinary skill in the art" ("POSA"), the USTPO will consider it obvious and will not grant a patent. Relevant here, eVenus argued that the larger, 200-liter manufacturing process would have been obvious to a POSA because of the qualities of the earlier, 45-liter version of Exparel.

32. "Anticipation" refers to the prior invention or disclosure of the claimed invention by another party or the inventor's disclosure of the claimed invention before filing a patent application. Anticipation can occur through various means, such as publication, sale, or offer to sell. An anticipated invention is not novel or new, as it has already been disclosed or made

---

[2] This Amended Complaint uses "eVenus" to refer to eVenus, Jiangsu Hengrui Pharmaceuticals Co., of which eVenus is a wholly-owned subsidiary, and Fresenius Kabi USA, LLC, a U.S. distributor of eVenus and Jiangsu Hengrui products.

[3] *See Pacira Pharm. v. eVenus Pharm. Labs.*, No. 21-19829 (D.N.J.).

available to the public. In other words, if someone else has knowledge of or has used the invention before a patent application is filed for it, that applicant will not be entitled to a patent. Here eVenus claimed that the existence of the 45-liter Exparel anticipated the production of the larger 200-liter version of Exparel.

33. In December 2021, eVenus submitted to the FDA an amendment to its ANDA seeking authorization for the manufacturing and marketing of a generic version of Exparel in the U.S. prior to the expiration of the 495 patent.[4] eVenus also advised that it submitted and sought authorization from the FDA for the manufacturing and marketing of a generic version of Exparel (266 mg/20 mL and 133 mg/10 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,179,336 ("336 patent"). eVenus further alleged in the Notice Letter, that asserted the invalidity of the 495 patent and the 336 patent, denying infringement, that both the 495 patent and the 336 patent are invalid and/or not infringed.

34. On February 10, 2022, Pacira filed a second lawsuit against eVenus again seeking an order preventing eVenus from developing a generic version of Exparel at different doses. ("2022 lawsuit).[5] The 2022 lawsuit involved the 495 patent and another patent, the 336 patent.

35. In February 2022, the District Court consolidated the 2021 lawsuit and the 2022 lawsuit.

---

[4] The 495 patent was scheduled to expire in 2041.

[5] *See Pacira Pharm. v. eVenus Pharm. Labs.*, No. 22-00718 (D.N.J.).

### D. Pacira's Public Discussions of the Lawsuits Before the Class Period

36. Prior to the Class Period, Pacira publicly disclosed only basic information about the lawsuits, creating the impression that there was no specific danger from generics. Analysts understood that to be Pacira's message.

37. In its annual report on Form 10-K, filed with the SEC on February 28, 2023 ("2022 10-K"), in Note 20, "Commitments and Contingencies," Pacira described the facts about the lawsuits:

> *Legal Proceedings*
>
> From time to time, the Company has been and may again become involved in legal proceedings arising in the ordinary course of its business, including those related to patents, product liability and government investigations. Except as described below, the Company is not presently a party to any legal proceedings that it believes to be material, and is not aware of any pending or threatened litigation against the Company which it believes could have a material adverse effect on its business, operating results, financial condition or cash flows.
>
> ***
>
> In October 2021, the Company received a Notice Letter advising that eVenus Pharmaceutical Laboratories, Inc., or eVenus, of Princeton, New Jersey, submitted to the FDA an Abbreviated New Drug Application (ANDA) with a Paragraph IV certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,033,495 (the '495 patent).
>
> In November 2021, the Company filed a patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (21-cv-19829) asserting infringement of the '495 patent. This triggered an automatic 30-month stay of final approval of the eVenus ANDA. On January 6, 2022, eVenus filed an Answer with counterclaims to the Complaint, alleging the '495 patent is invalid and/or not infringed through the manufacture, sale, or offer for sale of the product described in product described in eVenus's ANDA submission.
>
> In December 2021, the Company received a second Notice Letter advising that eVenus submitted to the FDA an amendment to its ANDA with a Paragraph IV Certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (133 mg/10 mL) in the U.S. prior to the expiration

> of the ’495 patent. In the Notice Letter, eVenus also advised that it submitted a Paragraph IV Certification to the FDA seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL and 133 mg/10 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,179,336 (the ’336 patent). eVenus further alleges in the Notice Letter that both the ’495 patent and the ’336 patent are invalid and/or not infringed.
>
> In February 2022, the Company filed a second patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (22-cv-00718) asserting that the 133 mg/10 mL ANDA product will infringe the ’495 and ’336 patents and that the 266 mg/20 mL ANDA product will infringe the ’336 patent. This filing triggered a second automatic 30-month stay of final approval for the 133 mg/10 mL ANDA product.
>
> These litigations are in their early stages, and the Company is unable to predict their outcome at this time.

38. On February 28, 2023, Defendants convened an earnings conference call to discuss the Company’s fourth quarter and annual results for 2022 (“2022 earnings call”). In prepared remarks, Defendant Stack opined that Pacira had no worries whatsoever that generic competition would eat into its market for Exparel:

> Our EXPAREL growth initiatives are supported by a strong and growing patent estate. As a reminder, we currently have 8 Orange Book-listed patents, and ***any potential generic would have to successfully overcome each claim within every one of our patents to get to the point of establishing bioequivalence at commercial scale***. With no commercially viable alternative for a long-acting non-opioid postsurgical pain management, ***we are highly confident that EXPAREL will maintain its well-entrenched position as the branded market leader for many years to come***.[6]

39. Analysts conveyed to investors Defendants’ confidence that a generic entrant to the Exparel market did not threaten the Company’s results. For example, in a March 2, 2023

---

[6] All emphasis added unless otherwise noted.

analyst report, Barclays wrote that "Mgmt. said that it does not see any real generic threat to Exparel."

40. In the 1Q23 10-Q, filed with the SEC on May 3, 2023 (1Q23 10-Q"), in Note 15, "Commitments and Contingencies," Pacira again described the facts about the lawsuits:

> From time to time, the Company has been and may again become involved in legal proceedings arising in the ordinary course of its business, including those related to patents, product liability and government investigations. Except as described below, the Company is not presently a party to any legal proceedings that it believes to be material, and is not aware of any pending or threatened litigation against the Company which it believes could have a material adverse effect on its business, operating results, financial condition or cash flows.
>
> ***
>
> In October 2021, the Company received a Notice Letter advising that eVenus Pharmaceutical Laboratories, Inc., or eVenus, of Princeton, New Jersey, submitted to the FDA an Abbreviated New Drug Application, or ANDA with a Paragraph IV certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,033,495 (the '495 patent).
>
> In November 2021, the Company filed a patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (21-cv-19829) asserting infringement of the '495 patent. This triggered an automatic 30-month stay of final approval of the eVenus ANDA. On January 6, 2022, eVenus filed an Answer with counterclaims to the Complaint, alleging the '495 patent is invalid and/or not infringed through the manufacture, sale, or offer for sale of the product described in eVenus's ANDA submission.
>
> In December 2021, the Company received a second Notice Letter advising that eVenus submitted to the FDA an amendment to its ANDA with a Paragraph IV Certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (133 mg/10 mL) in the U.S. prior to the expiration of the '495 patent. In the Notice Letter, eVenus also advised that it submitted a Paragraph IV Certification to the FDA seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL and 133 mg/10 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,179,336 (the '336 patent). eVenus further alleges in the Notice Letter that both the '495 patent and the '336 patent are invalid and/or not infringed.
>
> In February 2022, the Company filed a second patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New

> Jersey (22-cv-00718) asserting that the 133 mg/10 mL ANDA product will infringe the ’495 and ’336 patents and that the 266 mg/20 mL ANDA product will infringe the ’336 patent. This filing triggered a second automatic 30-month stay of final approval for the 133 mg/10 mL ANDA product.
>
> In April 2023, the Company filed a third patent infringement suit against eVenus, its parent company, and Fresenius Kabi USA, LLC, in the U.S. District Court for the District of New Jersey (23-cv-2367) asserting that the 133 mg/10 mL and 266 mg/20 mL ANDA products will infringe U.S. Patent No. 11,426,348 (the ’348 patent).
>
> These litigations are in their early stages, and the Company is unable to predict their outcome at this time.

**E. The June 6, 2023, “Claim Construction” Opinion**

41. There are two steps in a patent infringement analysis. First, the court must determine the proper construction, or meaning, of a disputed claim or claims. This hearing, called a “Markman hearing” or a “claim construction” hearing, is usually held after discovery is complete. Claim construction requires the court to ascertain the meaning of the claim to a person of ordinary skill in the art at the time of invention. The court’s analysis focuses on the plain meaning of the claim language. The “Markman hearing” presents questions of law to be decided by the court. The claim construction hearing lays the groundwork for the ensuing infringement trial, which is decided by a factfinder.

42. On March 9, 2023, Federal District Court Judge Madeline Cox Arleo of the District of New Jersey held a “Markman Hearing,” also known as a “claim construction” hearing, to decide the scope and meaning of specific phrases within the 495 patent about which the parties were unable to agree, meanings which would carry over to the trial of the 2021 lawsuit and the 2022 lawsuit.

43. On June 6, 2023, following that “Markman Hearing,” Judge Arleo issued an unpublished opinion settling the disputed claims construction issues involving the 495 patent.

On key issues,[7] Judge Arleo ruled against Pacira's claim construction proposals and in favor of eVenus's proposals, decisions that materially weakened Pacira's ability to prevail at trial.

44. Pacira argued that Judge Arleo should construe the preamble to the 495 patent[8] to mean that there be an ***aqueous suspension*** of bupivacaine encapsulated multivesicular liposomes having a ***batch volume greater than about 45-250 liters*** (for the '495 Patent) prepared by a process. Pacira argued as such because these constructions would help it avoid a ruling (which eventually came at the end of the trial) of invalidity based on their own product, Exparel, which is prior art to both the 495 patent and 336 patent because it had been commercially available in the United States since 2012. The Court rejected Pacira's argument to limit "composition" to an "aqueous suspension." Further, the Court rejected Pacira's arguments to limit the term "commercial scale" to be 45 liters to 250 liters, or to read a volume limitation into the term. As eVenus highlighted to the District Court, Pacira itself had represented to the FDA that its 45 liter batch was "commercial scale" (an interpretation contrary to that Pacira asked the Judge to find during the Markman hearing).

45. Losing this part of the claim construction materially weakened Pacira's path to prevailing at trial on the validity of the 495 patent. As eVenus had argued, Defendants had advanced their claims construction argument because Pacira needed to prevail on claims construction to avoid an invalidity ruling. Having failed to do so, it was now duty-bound to

---

[7] While Pacira prevailed on some claim construction issues, none of those terms were involved at the eventual trial of the matter, or relevant to that trial.

[8] The preamble read: "a composition of bupivacaine encapsulated multivesicular liposomes (MVLs) prepared by a commercial scale process."

disclose the claim construction failure if Defendants chose to discuss the upcoming trial or discuss Pacira's chances at the upcoming trial.

## V. FALSE AND MISLEADING STATEMENTS AND OMISSIONS

46. On June 26, 2023, Barclays published a report about a "fireside chat" it convened on June 23, 2023, in which Defendant Stack participated. During the fireside chat, discussing "other key takeaways on Exparel," Stack stated that "the company does not see any threat from the P4 filer, especially since this filer is only addressing the first 2 patents on Exparel…." The P4 filer is eVenus.

47. The foregoing opinion that "the company does not see any threat from the P4 filer" was materially false and misleading because, in full context, to render the opinion not misleading, in discussing any threat posed by eVenus to Pacira's patent protection, Defendants were duty-bound to disclose that the June 6, 2023, claim construction ruling materially negatively affected Pacira's chances of prevailing at trial, because materially adverse information in his possession did not fairly align with the opinion he expressed, specifically the material adverse fact that the June 6, 2023, claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent.

48. Nearly two months after Judge Arleo's findings on claim construction in the Markman Hearing, in the 2Q23 10-Q, filed with the SEC on August 2, 2023, in Note 15, "Commitments and Contingencies," Pacira disclosed the following about its eVenus patent actions:

> From time to time, the Company has been and may again become involved in legal proceedings arising in the ordinary course of its business, including those related to patents, product liability and government investigations. Except as described below, the Company is not presently a party to any legal proceedings that it believes to be material, and is not aware of any pending or threatened litigation against the Company which it believes could have a material adverse effect on its business, operating results, financial condition or cash flows.

***

*eVenus Pharmaceutical Laboratories Litigations*

In October 2021, the Company received a Notice Letter advising that eVenus Pharmaceutical Laboratories, Inc., or eVenus, of Princeton, New Jersey, submitted to the FDA an Abbreviated New Drug Application, or ANDA with a Paragraph IV certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,033,495 (the ’495 patent).

In November 2021, the Company filed a patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (21-cv-19829) asserting infringement of the ’495 patent. This triggered an automatic 30-month stay of final approval of the eVenus ANDA. On January 6, 2022, eVenus filed an Answer with counterclaims to the Complaint, alleging the ’495 patent is invalid and/or not infringed through the manufacture, sale, or offer for sale of the product described in product described in eVenus’s ANDA submission.

In December 2021, the Company received a second Notice Letter advising that eVenus submitted to the FDA an amendment to its ANDA with a Paragraph IV Certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (133 mg/10 mL) in the U.S. prior to the expiration of the ’495 patent. In the Notice Letter, eVenus also advised that it submitted a Paragraph IV Certification to the FDA seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL and 133 mg/10 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,179,336 (the ’336 patent). eVenus further alleges in the Notice Letter that both the ’495 patent and the ’336 patent are invalid and/or not infringed.

In February 2022, the Company filed a second patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (22-cv-00718) asserting that the 133 mg/10 mL ANDA product will infringe the ’495 and ’336 patents and that the 266 mg/20 mL ANDA product will infringe the ’336 patent. This filing triggered a second automatic 30-month stay of final approval for the 133 mg/10 mL ANDA product. The first and second patent infringement suits were consolidated.

In February 2023, eVenus filed its first amended answer to the first amended complaint, alleging patent invalidity, non-infringement and inequitable conduct. The Company has denied the allegations in eVenus’s first amended answer.

In April 2023, the Company filed a third patent infringement suit against eVenus, its parent company, and Fresenius Kabi USA, LLC, in the U.S. District Court for

> the District of New Jersey (23-cv-2367) asserting that the 133 mg/10 mL and 266 mg/20 mL ANDA products will infringe U.S. Patent No. 11,426,348 (the '348 patent). In July 2023, eVenus filed its answer with claims for declaratory judgment, alleging patent invalidity, non-infringement and inequitable conduct with respect to the '348 patent as well as the Company's other patents, U.S. Patent Nos. 11,278,494; 11,304,904; 11,311,486; 11,357,727 and 11,452,691.
>
> These litigations are in their early stages, and the Company is unable to predict their outcome at this time.

49. The foregoing statements summarizing the eVenus litigation are materially false and misleading. Having discussed litigation about its Exparel patents, Defendants were duty-bound to disclose the material adverse facts that the June 6, 2023, claim construction ruling had made it materially more likely that the court would find the 495 patent invalid.

50. As for Defendants' opinion that "these litigations are in their early stages, and the Company is unable to predict their outcome at this time," this statement was materially false and misleading. In full context, to render the opinion not misleading, in discussing the future result of the trial concerning the 495 patent, Defendants were duty-bound to disclose that the June 6, 2023, claim construction ruling materially negatively affected Pacira's chances of prevailing in that trial, because the information of which he had actual knowledge or that he was severely reckless in not knowing did not fairly align with the opinion he expressed, specifically the material adverse fact that the June 6, 2023, claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent.

51. The 2Q23 10-Q incorporated the risk warnings in the 2022 10-K, which read:

> In October 2021, we received a Notice Letter advising that eVenus Pharmaceutical Laboratories, Inc., or eVenus, of Princeton, New Jersey, submitted to the FDA an ANDA with a Paragraph IV certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,033,495 (the '495 patent).
>
> In November 2021, we filed a patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (21-cv-19829)

asserting infringement of the ’495 patent. This triggered an automatic 30-month stay of final approval of the eVenus ANDA.

On January 6, 2022, eVenus filed an Answer with counterclaims to the Complaint, alleging the ’495 patent is invalid and/or not infringed through the manufacture, sale, or offer for sale of the product described in product described in eVenus’s ANDA submission.

In December 2021, we received a second Notice Letter advising that eVenus submitted to the FDA an amendment to its ANDA with a Paragraph IV Certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (133 mg/10 mL) in the U.S. prior to the expiration of the ’495 patent. In the Notice Letter, eVenus also advised that it submitted a Paragraph IV Certification to the FDA seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL and 133 mg/10 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,179,336 (the ’336 patent). eVenus further alleges in the Notice Letter that both the ’495 patent and the ’336 patent are invalid and/or not infringed.

In February 2022, we filed a second patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (22-cv-00718) asserting that the 133 mg/10 mL ANDA product will infringe the ’495 and ’336 patents and that the 266 mg/20 mL ANDA product will infringe the ’336 patent. This filing triggered a second automatic 30-month stay of final approval for the 133 mg/10 mL ANDA product.

These litigations are in their early stages, and we are unable to predict their outcome at this time.

52. The foregoing statements regarding eVenus litigation are materially false and misleading because, in the context of and having chosen to discuss litigation about its Exparel patents, Defendants were duty-bound to disclose the material adverse facts that the June 6, 2023, claim construction ruling had made it materially more likely that the court would find the 495 patent invalid.

53. As for Defendants’ opinion that “these litigations are in their early stages, and the Company is unable to predict their outcome at this time,” this statement was materially false and misleading. In full context, to render the opinion not misleading, in discussing the future result of the trial concerning the 495 patent, Defendants were duty-bound to disclose that the June 6, 2023,

claim construction ruling materially negatively affected Pacira's chances of prevailing in that trial, because the information of which he had actual knowledge or that he was severely reckless in not knowing did not fairly align with the opinion he expressed, specifically the material adverse fact that the June 6, 2023, claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent.

54. In the 3Q23 10-Q, filed with the SEC on November 2, 2023, in Note 15, "Commitments and Contingencies," Pacira published the following about its patent actions:

> From time to time, the Company has been and may again become involved in legal proceedings arising in the ordinary course of its business, including those related to patents, product liability and government investigations. Except as described below, the Company is not presently a party to any legal proceedings that it believes to be material, and is not aware of any pending or threatened litigation against the Company which it believes could have a material adverse effect on its business, operating results, financial condition or cash flows.
>
> ***
>
> *eVenus Pharmaceutical Laboratories Litigations*
>
> In October 2021, the Company received a Notice Letter advising that eVenus Pharmaceutical Laboratories, Inc., or eVenus, of Princeton, New Jersey, submitted to the FDA an Abbreviated New Drug Application, or ANDA with a Paragraph IV certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,033,495 (the '495 patent).
>
> In November 2021, the Company filed a patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (21-cv-19829) asserting infringement of the '495 patent. This triggered an automatic 30-month stay of final approval of the eVenus ANDA. On January 6, 2022, eVenus filed an Answer with counterclaims to the Complaint, alleging the '495 patent is invalid and/or not infringed through the manufacture, sale, or offer for sale of the product described in product described in eVenus's ANDA submission.
>
> In December 2021, the Company received a second Notice Letter advising that eVenus submitted to the FDA an amendment to its ANDA with a Paragraph IV Certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (133 mg/10 mL) in the U.S. prior to the expiration

> of the ’495 patent. In the Notice Letter, eVenus also advised that it submitted a Paragraph IV Certification to the FDA seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL and 133 mg/10 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,179,336 (the ’336 patent). eVenus further alleges in the Notice Letter that both the ’495 patent and the ’336 patent are invalid and/or not infringed.
>
> In February 2022, the Company filed a second patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (22-cv-00718) asserting that the 133 mg/10 mL ANDA product will infringe the ’495 and ’336 patents and that the 266 mg/20 mL ANDA product will infringe the ’336 patent. This filing triggered a second automatic 30-month stay of final approval for the 133 mg/10 mL ANDA product. The first and second patent infringement suits were consolidated.
>
> In February 2023, eVenus filed its first amended answer to the first amended complaint, alleging patent invalidity, non-infringement and inequitable conduct. The Company has denied the allegations in eVenus’s first amended answer.
>
> In April 2023, the Company filed a third patent infringement suit against eVenus, its parent company, and Fresenius Kabi USA, LLC, in the U.S. District Court for the District of New Jersey (23-cv-2367) asserting that the 133 mg/10 mL and 266 mg/20 mL ANDA products will infringe U.S. Patent No. 11,426,348 (the ’348 patent). In July 2023, eVenus filed its answer with claims for declaratory judgment, alleging patent invalidity, non-infringement and inequitable conduct with respect to the ’348 patent as well as the Company’s other patents, U.S. Patent Nos. 11,278,494; 11,304,904; 11,311,486; 11,357,727 and 11,452,691.
>
> The Company is unable to predict the outcome of this litigation at this time.

55. The foregoing statements regarding eVenus litigation are materially false and misleading because, in the context of and having chosen to discuss litigation about its Exparel patents, Defendants were duty-bound to disclose the material adverse facts that the June 6, 2023, claim construction ruling had made it materially more likely that the court would find the 495 patent invalid.

56. As for Defendants’ opinion that “the Company is unable to predict the outcome of this litigation at this time,” this statement was materially false and misleading. In full context, to render the opinion not misleading, in discussing the future result of the trial concerning the 495

patent, Defendants were duty-bound to disclose that the June 6, 2023, claim construction ruling materially negatively affected Pacira's chances of prevailing in that trial, because the information of which he had actual knowledge or that he was severely reckless in not knowing did not fairly align with the opinion he expressed, specifically the material adverse fact that the June 6, 2023, claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent.

57. The 3Q23 10-Q incorporated the risk warnings in the 2022 10-K, which read:

> In October 2021, we received a Notice Letter advising that eVenus Pharmaceutical Laboratories, Inc., or eVenus, of Princeton, New Jersey, submitted to the FDA an ANDA with a Paragraph IV certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,033,495 (the '495 patent).
>
> In November 2021, we filed a patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (21-cv-19829) asserting infringement of the '495 patent. This triggered an automatic 30-month stay of final approval of the eVenus ANDA.
>
> On January 6, 2022, eVenus filed an Answer with counterclaims to the Complaint, alleging the '495 patent is invalid and/or not infringed through the manufacture, sale, or offer for sale of the product described in product described in eVenus's ANDA submission.
>
> In December 2021, we received a second Notice Letter advising that eVenus submitted to the FDA an amendment to its ANDA with a Paragraph IV Certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (133 mg/10 mL) in the U.S. prior to the expiration of the '495 patent. In the Notice Letter, eVenus also advised that it submitted a Paragraph IV Certification to the FDA seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL and 133 mg/10 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,179,336 (the '336 patent). eVenus further alleges in the Notice Letter that both the '495 patent and the '336 patent are invalid and/or not infringed.
>
> In February 2022, we filed a second patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (22-cv-00718) asserting that the 133 mg/10 mL ANDA product will infringe the '495 and '336 patents and that the 266 mg/20 mL ANDA product will infringe the '336 patent. This filing triggered a second automatic 30-month stay of final approval for

> the 133 mg/10 mL ANDA product.
>
> These litigations are in their early stages, and we are unable to predict their outcome at this time.

58. The foregoing statements regarding eVenus litigation are materially false and misleading because, in the context of and having chosen to discuss litigation about its Exparel patents, Defendants were duty-bound to disclose the material adverse facts that the June 6, 2023, claim construction ruling had made it materially more likely that the court would find the 495 patent invalid.

59. As for Defendants' opinion that "these litigations are in their early stages, and we are unable to predict their outcome at this time," this statement was materially false and misleading. In full context, to render the opinion not misleading, in discussing the future result of the trial concerning the 495 patent, Defendants were duty-bound to disclose that the June 6, 2023, claim construction ruling materially negatively affected Pacira's chances of prevailing in that trial, because the information of which he had actual knowledge or that he was severely reckless in not knowing did not fairly align with the opinion he expressed, specifically the material adverse fact that the June 6, 2023, claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent.

60. On February 29, 2024, Pacira filed its 2023 10-K for the year ended December 31, 2023, with the SEC. In Note 20, "Commitments and Contingencies," Pacira discussed the eVenus lawsuits, writing that:

> ***eVenus Pharmaceutical Laboratories Litigations***
>
> From time to time, the Company has been and may again become involved in legal proceedings arising in the ordinary course of its business, including those related to patents, product liability and government investigations. Except as described below, the Company is not presently a party to any legal proceedings that it believes to be material, and is not aware of any pending or threatened litigation against the

Company which it believes could have a material adverse effect on its business, operating results, financial condition or cash flows.

***

*eVenus Pharmaceutical laboratories Litigation*

In October 2021, the Company received a Notice Letter advising that eVenus Pharmaceutical Laboratories, Inc., or eVenus, of Princeton, New Jersey, submitted to the FDA an Abbreviated New Drug Application, or ANDA with a Paragraph IV certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,033,495 (the ’495 patent).

In November 2021, we filed a patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (21-cv-19829) asserting infringement of the ’495 patent. This triggered an automatic 30-month stay of final approval of the eVenus ANDA. On January 6, 2022, eVenus filed an Answer with counterclaims to the Complaint, alleging the ’495 patent is invalid and/or not infringed through the manufacture, sale, or offer for sale of the product described in product described in eVenus’s ANDA submission.

In December 2021, we received a second Notice Letter advising that eVenus submitted to the FDA an amendment to its ANDA with a Paragraph IV Certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (133 mg/10 mL) in the U.S. prior to the expiration of the ’495 patent. In the Notice Letter, eVenus also advised that it submitted a Paragraph IV Certification to the FDA seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL and 133 mg/10 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,179,336 (the ’336 patent). eVenus further alleges in the Notice Letter that both the ’495 patent and the ’336 patent are invalid and/or not infringed.

In February 2022, we filed a second patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (22-cv-00718) asserting that the 133 mg/10 mL ANDA product will infringe the ’495 and ’336 patents and that the 266 mg/20 mL ANDA product will infringe the ’336 patent. This filing triggered a second automatic 30-month stay of final approval for the 133 mg/10 mL ANDA product.

In February 2023, eVenus filed its first amended answer to the first amended complaint, alleging patent invalidity, non-infringement and inequitable conduct. We have denied the allegations in eVenus’s first amended answer. We have subsequently voluntarily dismissed our claims with respect to the ’336 Patent. The trial on the remaining claim occurred in February 2024 with a decision expected to

be reached late in the first half of 2024.

In April 2023, we filed a third patent infringement suit against eVenus, its parent company, and Fresenius Kabi USA, LLC, in the U.S. District Court for the District of New Jersey (23-cv-2367) asserting that the 133 mg/10 mL and 266 mg/20 mL ANDA products will infringe U.S. Patent No. 11,426,348 (the ’348 patent). In July 2023, eVenus filed its answer with claims for declaratory judgment, alleging patent invalidity, non-infringement and inequitable conduct with respect to the ’348 patent as well as our other patents, U.S. Patent Nos. 11,278,494; 11,304,904; 11,311,486; 11,357,727 and 11,452,691.The parties have subsequently dismissed all patents other than the ’348 patent from this litigation.

We are unable to predict the outcome of these litigations at this time.

61. The foregoing statements regarding eVenus litigation are materially false and misleading because, in the context of and having chosen to discuss litigation about its Exparel patents, Defendants were duty-bound to disclose the material adverse facts that the June 6, 2023, claim construction ruling had made it materially more likely that the court would find the 495 patent invalid.

62. As for Defendants’ opinion that “we are unable to predict the outcome of these litigations at this time,” this statement was materially false and misleading. In full context, to render the opinion not misleading, in discussing the future result of the trial concerning the 495 patent, Defendants were duty-bound to disclose that the June 6, 2023, claim construction ruling materially negatively affected Pacira’s chances of prevailing in that trial, because the information of which he had actual knowledge or that he was severely reckless in not knowing did not fairly align with the opinion he expressed, specifically the material adverse fact that the June 6, 2023, claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent.

63. On February 29, 2024, Defendants convened a conference call with investors concerning the Company’s 4Q23 and full year 2023 results (“2023 Earnings Call”). In scripted

remarks Defendant Molloy stated, "[w]e are confident in our position, our 495 patent and the related 2041 expiry and we stand ready to engage the court with – in the event of any decision."

64. The foregoing statement of opinion expressing "confiden[ce] in our position, our 495 patent," was materially false and misleading because, in full context, in order to render the opinion not misleading, in discussing the future result of the trial concerning the 495 patent, Defendants were duty-bound to disclose that the June 6, 2023, claim construction ruling materially negatively affected Pacira's chances of prevailing in that trial, because material adverse information in his possession did not fairly align with the opinion he expressed, specifically the material adverse fact that the June 6, 2023, claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent.

65. Also during the 2023 Earnings Call, in response to an analyst question, discussing the trial on the 495 patent, Defendant Molloy stated that "we believe that we have a strong legal case and that eVenus is infringing on our patents."

66. The foregoing statement of opinion about a "strong legal case" was materially false and misleading because, in full context, in order to render the opinion not misleading, in discussing the future result of the trial concerning the 495 patent, Defendants were duty-bound to disclose that the June 6, 2023, claim construction ruling materially negatively affected Pacira's chances of prevailing in that trial, because material adverse information in his possession did not fairly align with the opinion he expressed, specifically the material adverse fact that the June 6, 2023, claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent.

67. Unaware of the adverse claim construction rulings, analysts continued to convey to investors that Pacira faced little or no risk from the eVenus patent litigation. For example, in a

February 29, 2024, analyst report, RBC Capital Markets analyst Gregory Renza wrote, with respect to the "trial on patent '495," that "we continue to see limited risk for Exparel."

68. On April 22, 2024, Pacira filed with the SEC its "Annual Report to Security Holders." The document included certifications from Defendants Lee and Reinhart. Discussing "eVenus Pharmaceutical Laboratories Litigation," Defendants wrote:

> In October 2021, the Company received a Notice Letter advising that eVenus Pharmaceutical Laboratories, Inc., or eVenus, of Princeton, New Jersey, submitted to the FDA an Abbreviated New Drug Application, or ANDA with a Paragraph IV certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,033,495 (the '495 patent).
>
> In November 2021, the Company filed a patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (21-cv-19829) asserting infringement of the '495 patent. This triggered an automatic 30-month stay of final approval of the eVenus ANDA. On January 6, 2022, eVenus filed an Answer with counterclaims to the Complaint, alleging the '495 patent is invalid and/or not infringed through the manufacture, sale, or offer for sale of the product described in product described in eVenus's ANDA submission
>
> In December 2021, the Company received a second Notice Letter advising that eVenus submitted to the FDA an amendment to its ANDA with a Paragraph IV Certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (133 mg/10 mL) in the U.S. prior to the expiration of the '495 patent. In the Notice Letter, eVenus also advised that it submitted a Paragraph IV Certification to the FDA seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL and 133 mg/10 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,179,336 (the '336 patent). eVenus further alleges in the Notice Letter that both the '495 patent and the '336 patent are invalid and/or not infringed.
>
> In February 2022, the Company filed a second patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (22-cv-00718) asserting that the 133 mg/10 mL ANDA product will infringe the '495 and '336 patents and that the 266 mg/20 mL ANDA product will infringe the '336 patent. This filing triggered a second automatic 30-month stay of final approval for the 133 mg/10 mL ANDA product. The first and second patent infringement suits were consolidated.
>
> In February 2023, eVenus filed its first amended answer to the first amended complaint, alleging patent invalidity, noninfringement and inequitable conduct.

> The Company has denied the allegations in eVenus's first amended answer. The Company has subsequently voluntarily dismissed its claims with respect to the '336 Patent. The trial on the remaining claim occurred in February 2024 with a decision expected to be reached late in the first half of 2024.
>
> In April 2023, the Company filed a third patent infringement suit against eVenus, its parent company, and Fresenius Kabi USA, LLC, in the U.S. District Court for the District of New Jersey (23-cv-2367) asserting that the 133 mg/10 mL and 266 mg/20 mL ANDA products will infringe U.S. Patent No. 11,426,348 (the '348 patent). In July 2023, eVenus filed its answer with claims for declaratory judgment, alleging patent invalidity, non-infringement and inequitable conduct with respect to the '348 patent as well as the Company's other patents, U.S. Patent Nos. 11,278,494; 11,304,904; 11,311,486; 11,357,727 and 11,452,691. The parties have subsequently dismissed all patents other than the '348 patent from this litigation.
>
> The Company is unable to predict the outcome of these litigations at this time.

69. The foregoing statements regarding eVenus litigation are materially false and misleading because, in the context of and having chosen to discuss litigation about its Exparel patents, Defendants were duty-bound to disclose the material adverse facts that the June 6, 2023, claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent. Further, having chosen to speak about the trial on the 495 patent's viability, which began in February 2024, Defendants were duty-bound to disclose that the June 6, 2023, claim construction ruling had made it materially more likely that the court would find the 495 patent invalid..

70. As for Defendants' opinion that "the Company is unable to predict the outcome of these litigations at this time," this statement was materially false and misleading. In full context, to render the opinion not misleading, in discussing the future result of the trial concerning the 495 patent, Defendants were duty-bound to disclose that the June 6, 2023, claim construction ruling materially negatively affected Pacira's chances of prevailing in that trial, because the information of which he had actual knowledge or that he was severely reckless in not knowing did not fairly align with the opinion he expressed, specifically the material adverse fact that the June 6, 2023,

claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent.

71. On May 7, 2024, Pacira filed with the SEC its 1Q24 10-Q. In Note 15, "Commitments and Contingencies," reporting about "eVenus Pharmaceutical Laboratories Litigation," Defendants wrote:

> From time to time, the Company has been and may again become involved in legal proceedings arising in the ordinary course of its business, including those related to its patents and intellectual property, product liability and government investigations. Except as described below, the Company is not presently a party to any legal proceedings that it believes to be material, and is not aware of any pending or threatened litigation against the Company which it believes could have a material adverse effect on its business, operating results, financial condition or cash flows.
>
> ***
>
> In October 2021, the Company received a Notice Letter advising that eVenus Pharmaceutical Laboratories, Inc., or eVenus, of Princeton, New Jersey, submitted to the FDA an Abbreviated New Drug Application, or ANDA with a Paragraph IV certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,033,495 (the '495 patent).
>
> In November 2021, the Company filed a patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (21-cv-19829) asserting infringement of the '495 patent. This triggered an automatic 30-month stay of final approval of the eVenus ANDA which expires on July 1, 2024. On January 6, 2022, eVenus filed an Answer with counterclaims to the Complaint, alleging the '495 patent is invalid and/or not infringed through the manufacture, sale, or offer for sale of the product described in eVenus's ANDA submission.
>
> In December 2021, the Company received a second Notice Letter advising that eVenus submitted to the FDA an amendment to its ANDA with a Paragraph IV Certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (133 mg/10 mL) in the U.S. prior to the expiration of the '495 patent. In the second Notice Letter, eVenus also advised that it submitted a Paragraph IV Certification to the FDA seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL and 133 mg/10 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,179,336 (the '336 patent). eVenus further alleges in the Notice Letter that both the '495 patent and the '336 patent are invalid and/or not infringed.

> In February 2022, the Company filed a second patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (22-cv-00718) asserting that the 133 mg/10 mL ANDA product will infringe the ‘495 and ‘336 patents and that the 266 mg/20 mL ANDA product will infringe the ‘336 patent. This filing triggered a second automatic 30-month stay of final approval for the 133 mg/10 mL ANDA product which expires on July 1, 2024. The first and second patent infringement suits were consolidated.
>
> In February 2023, eVenus filed its first amended answer to the first amended complaint, alleging patent invalidity, non-infringement and inequitable conduct. The Company has denied the allegations in eVenus's first amended answer. The Company has subsequently voluntarily dismissed its claims with respect to the ‘336 Patent. The trial on the remaining claim was conducted in February 2024 with a decision expected in the coming months.
>
> In April 2023, the Company filed a third patent infringement suit against eVenus, its parent company, and Fresenius Kabi USA, LLC, in the U.S. District Court for the District of New Jersey (23-cv-2367) asserting that the 133 mg/10 mL and 266 mg/20 mL ANDA products will infringe U.S. Patent No. 11,426,348 (the ‘348 patent). In July 2023, eVenus filed its answer with claims for declaratory judgment, alleging patent invalidity, non-infringement and inequitable conduct with respect to the ‘348 patent as well as the Company's other patents, U.S. Patent Nos. 11,278,494; 11,304,904; 11,311,486; 11,357,727 and 11,452,691. The parties have subsequently dismissed all patents other than the ‘348 patent from this litigation.
>
> The Company is unable to predict the outcome of these litigations at this time.

72. The foregoing statements regarding eVenus litigation are materially false and misleading because, in the context of and having chosen to discuss litigation about its Exparel patents, Defendants were duty-bound to disclose the material adverse facts that the June 6, 2023, claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent. Further, having chosen to speak about the already-ongoing trial, Defendants were duty-bound to disclose that the June 6, 2023, claim construction ruling had made it materially more likely that the court would find the 495 patent invalid.

73. As for Defendants' opinion that "the Company is unable to predict the outcome of these litigations at this time," this statement was materially false and misleading. In full context,

to render the opinion not misleading, in discussing the future result of the trial concerning the 495 patent, Defendants were duty-bound to disclose that the June 6, 2023, claim construction ruling materially negatively affected Pacira's chances of prevailing in that trial, because the information of which he had actual knowledge or that he was severely reckless in not knowing did not fairly align with the opinion he expressed, specifically the material adverse fact that the June 6, 2023, claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent.

74. On July 2, 2024, the FDA approved eVenus's ANDA for a generic version of Exparel.

75. On July 30, 2024, Pacira filed with the SEC its 2Q24 10-Q. Reporting about "eVenus Pharmaceutical Laboratories Litigation," in Note 15, "Commitments and Contingencies," Defendants wrote:

> From time to time, the Company has been and may again become involved in legal proceedings arising in the ordinary course of its business, including those related to its patents and intellectual property, product liability and government investigations. Except as described below, the Company is not presently a party to any legal proceedings that it believes to be material, and is not aware of any pending or threatened litigation against the Company which it believes could have a material adverse effect on its business, operating results, financial condition or cash flows.
>
> ***
>
> In October 2021, the Company received a Notice Letter advising that eVenus Pharmaceutical Laboratories, Inc., or eVenus, of Princeton, New Jersey, submitted to the United States Food and Drug Administration, or FDA, an Abbreviated New Drug Application, or ANDA with a Paragraph IV certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,033,495 (the '495 patent).
>
> In November 2021, the Company filed a patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (21-cv-19829) asserting infringement of the '495 patent. This triggered an automatic 30-month stay of final approval of the eVenus ANDA which expired on July 1,

2024. On January 6, 2022, eVenus filed an Answer with counterclaims to the Complaint, alleging the ‘495 patent is invalid and/or not infringed through the manufacture, sale, or offer for sale of the product described in eVenus’s ANDA submission.

In December 2021, the Company received a second Notice Letter advising that eVenus submitted to the FDA an amendment to its ANDA with a Paragraph IV Certification seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (133 mg/10 mL) in the U.S. prior to the expiration of the ‘495 patent. In the second Notice Letter, eVenus also advised that it submitted a Paragraph IV Certification to the FDA seeking authorization for the manufacturing and marketing of a generic version of EXPAREL (266 mg/20 mL and 133 mg/10 mL) in the U.S. prior to the expiration of U.S. Patent No. 11,179,336 (the ‘336 patent). eVenus further alleges in the Notice Letter that both the ‘495 patent and the ‘336 patent are invalid and/or not infringed.

In February 2022, the Company filed a second patent infringement suit against eVenus and its parent company in the U.S. District Court for the District of New Jersey (22-cv-00718) asserting that the 133 mg/10 mL ANDA product will infringe the ‘495 and ‘336 patents and that the 266 mg/20 mL ANDA product will infringe the ‘336 patent. This filing triggered a second automatic 30-month stay of final approval for the 133 mg/10 mL ANDA product which expired on July 1, 2024. The first and second patent infringement suits were consolidated.

In February 2023, eVenus filed its first amended answer to the first amended complaint, alleging patent invalidity, non-infringement and inequitable conduct. The Company has denied the allegations in eVenus’s first amended answer. The Company has subsequently voluntarily dismissed its claims with respect to the ‘336 Patent. The trial on the remaining claim was conducted in February 2024 with a decision expected in the coming days.

In April 2023, the Company filed a third patent infringement suit against eVenus, its parent company, and Fresenius Kabi USA, LLC, or Fresenius, in the U.S. District Court for the District of New Jersey (23-cv-2367) asserting that the 133 mg/10 mL and 266 mg/20 mL ANDA products will infringe U.S. Patent No. 11,426,348 (the ‘348 patent). In July 2023, eVenus filed its answer with claims for declaratory judgment, alleging patent invalidity, non-infringement and inequitable conduct with respect to the ‘348 patent as well as the Company’s other patents, U.S. Patent Nos. 11,278,494; 11,304,904; 11,311,486; 11,357,727 and 11,452,691. The parties have subsequently dismissed all patents other than the ‘348 patent from this litigation. This action is in the discovery stage.

In May 2024, the Company filed a fourth patent infringement suit against eVenus, its parent company and Fresenius in the U.S. District Court for the District of New Jersey (24-cv-6294) asserting that the 133 mg/10 mL and 266 mg/20 mL ANDA products will infringe U.S. Patent Nos. 11,819,574 and 11,819,575. This action is

> in the pleadings stage.
>
> In July 2024, the Company filed a fifth patent infringement suit against eVenus, its parent company and Fresenius in the U.S. District Court for the District of New Jersey (24-cv-7680) asserting that the 133 mg/10 mL and 266 mg/20 mL ANDA products will infringe U.S. Patent No. 11,925,706. This action is in the pleadings stage.
>
> The Company is unable to predict the outcome of these litigations at this time.

76. The foregoing statements regarding eVenus litigation are materially false and misleading because, in the context of and having chosen to discuss litigation about its Exparel patents, Defendants were duty-bound to disclose the material adverse facts that the June 6, 2023, claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent. Further, having chosen to speak about the trial on the validity of the 495 patent, Defendants were duty-bound to disclose that the June 6, 2023, claim construction ruling had made it materially more likely that the court would find the 495 patent invalid.

77. As for Defendants' opinion that "the Company is unable to predict the outcome of these litigations at this time," this statement was materially false and misleading. In full context, to render the opinion not misleading, in discussing the future result of the trial concerning the 495 patent, Defendants were duty-bound to disclose that the June 6, 2023, claim construction ruling materially negatively affected Pacira's chances of prevailing in that trial, because the information of which he had actual knowledge or that he was severely reckless in not knowing did not fairly align with the opinion he expressed, specifically the material adverse fact that the June 6, 2023, claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent.

## VI. THE TRUTH EMERGES

78. Ultimately, Pacira chose to go to trial only on Claim 7 of the 495 patent. Claim 7 is for the composition of claim 1, which includes the preamble that was at issue in the claim construction hearing. The District Court stated that "Claim 7 is dependent on Claim 1." 2024 WL 3812188, at *15.

79. On August 9, 2024, on a trial on the merits of patent validity, Judge Arleo ruled against Pacira's claims, holding that Pacira's 495 patent was invalid for obviousness and anticipation. *See* 2024 WL 3812188.

80. The Court's earlier claim construction decision materially undermined Pacira's case at trial. Because Judge Arleo had not limited the 495 patent preamble to batches greater than about 45 liters to 250 liters, the Court cited prior art batches of 45 liter Exparel in ruling the 495 patent obvious.[9] Similarly, for anticipation, the Court cited to stability study results of certain non-prior art batches of 45 liter Exparel, as well as certain studies of certain non-prior art batches of 200 liter Exparel.

81. Had the Court earlier adopted Pacira's claim construction, its chances to avoid the invalidity of the 495 patent would have been greater as eVenus's focus on the 45 liter stability studies would not have been as persuasive. Put differently the Markman ruling negatively impacted Pacira's chance of success on the obviousness issue in light of the 45 liter stability

---

[9] The District Court wrote that:

> Although there is some evidence of a long-felt, unresolved need for a stable Exparel produced by a larger-scale manufacturing process, the weight of the evidence leads the Court to conclude that the resolution of this need was largely a motivation to improve an existing, available, and adequate manufacturing process.

2024 WL 3812188, at *13.

studies. As for anticipation, the Court's Markman ruling similarly negatively impacted Pacira's chance of success..

82. That same day, August 9, 2024, Pacira issued a press release acknowledging its defeat:

> **TAMPA, FL, August 9, 2024** - Pacira BioSciences, Inc. (Nasdaq: PCRX), the industry leader in its commitment to non-opioid pain management and regenerative health solutions, today announced that the U.S. District Court for the District of New Jersey has found that the company's U.S. Patent No. 11,033,495 (the '495 patent) is not valid.
>
> "We remain steadfast in our belief in the strength and validity of our intellectual property and that eVenus is infringing upon our patents," said Frank D. Lee, chief executive officer of Pacira BioSciences. "In light of the Court's decision, we are considering our legal options, which include pursuing an appellate review at the U.S. Court of Appeals for the Federal Court as warranted."
>
> "We firmly believe we have built a strong portfolio of intellectual property and that the EXPAREL franchise is well protected on multiple levels. Three separate infringement suits are underway, and we have additional patents that are forthcoming," added Mr. Lee.

83. On this news, Pacira's stock price nosedived on August 9, 2024, from a closing price of $22.36 per share on August 8, 2024, to a closing price of $11.70 on August 9, 2024. The stock lost over 47% of its value in a single day, harming investors.

84. Analyst reaction was negative, never having been told about the June 6, 2023, claim construction ruling. On August 9, 2024, RBC Capital Markets analyst Gregory Renza called the invalidity of the 495 patent "a major disappointment." That same day, a Jefferies analyst called it a "worst case" result, and anticipated a "lasting overhang on PCRX shares…" On August 13, 2024, a Truist Securities analyst called the trial loss "a major setback …. Pacira's risk profile has significantly worsened …we anticipate [a] plausible question of credibility." On October 21, 2024, RBC analyst Renza reiterated that "FDA approval of generic Exparel (7/2)

and patent litigation loss (8/9) to eVenus remains in focus and an overhang to the PCRX story and stock…"

85. On April 7, 2025, Pacira filed the following press release with the SEC:

**Pacira BioSciences Announces Settlement of U.S. Patent Litigation for EXPAREL**

-- Fresenius Kabi licensed to sell volume-limited amounts of generic liposomal bupivacaine in the U.S. beginning on a confidential date in 2030 --

-- Fresenius also licensed to sell generic liposomal bupivacaine in the U.S. without volume limitations no earlier than 2039 --

**Brisbane, CA, April 7, 2025 (GLOBE NEWSWIRE)** -- Pacira BioSciences, Inc. (Nasdaq: PCRX), the industry leader in its commitment to deliver innovative, non-opioid pain therapies to transform the lives of patients, today announced that it has settled its litigations with Fresenius Kabi USA, LLC (Fresenius), Jiangsu Hengrui Pharmaceuticals Co., Ltd., and eVenus Pharmaceuticals Laboratories, Inc. related to patents for EXPAREL® (bupivacaine liposome injectable suspension).

As part of the settlement, the parties will file Consent Judgments with the United States Court of Appeals for the Federal Circuit and the United States District Courts for the District of New Jersey and the Northern District of Illinois that enjoin Fresenius from marketing generic bupivacaine liposome injectable suspension before the expiration of the patents-in-suit, except as provided for in the settlement described below.

In settlement of all outstanding claims in the litigations, Pacira has agreed to provide Fresenius with a license to Pacira's patents required to manufacture and sell certain volume-limited amounts of generic bupivacaine liposome injectable suspension in the United States beginning on a confidential date that is sometime in early 2030. The license will permit entry of generic bupivacaine liposome injectable suspension before the July 2, 2044 expiration date of the last-to-expire of Pacira's Orange Book-listed patents for EXPAREL.

While the agreed-upon volume-limited percentages are confidential, they begin at a high-single-digit percentage of the total volumes distributed in the U.S. market and increase gradually in each 12-month period following the volume-limited entry date until reaching a percentage in the low thirties in 2033 and increasing modestly in each of the next two 12-month periods before reaching a maximum percentage in the high thirties of the total volumes distributed in the U.S. for the final three years of the agreement. In addition, Pacira has agreed to provide Fresenius with a license to Pacira's patents required to manufacture and sell an unlimited quantity of generic bupivacaine liposome injectable suspension in the U.S. beginning no

earlier than 2039.

> "We remain confident in our EXPAREL intellectual property portfolio and believe this settlement agreement appropriately recognizes the strength of our patents and provides clarity around EXPAREL exclusivity," said Frank D. Lee, chief executive officer of Pacira. "With the litigation resolved, we look forward to focusing on advancing our 5x30 strategy and building upon our leadership position in musculoskeletal pain and adjacencies by developing new treatments that address the significant unmet needs of millions of Americans living with chronic pain."

86. On May 8, 2025, Pacira filed its "Settlement Agreement" with eVenus as an exhibit to its May 8, 2025, 1Q25 10-Q. The Settlement Agreement, in Section 2.7, "Saved Litigation Costs," called for Pacira to pay $7 million to eVenus:

> In recognition of the savings inuring to Pacira in terms of the avoidance of fees, costs, expenditure of time and resources, disruption, and burden associated with continuing the Pending Litigations, any appeals that may be taken of the Pending Litigations, and any other actions or suits that may occur related to the Licensed ANDA or the Licensed ANDA Product… Pacira will pay to [the eVenus defendants] Seven Million Dollars ($7,000,000.00)…

87. In the 1Q25 10-Q itself, Pacira stated that as part of the Settlement Agreement, "in recognition of the Company's expected savings with respect to, among other things, the avoidance of fees, costs, time and resources associated with continuing the litigations, the Company paid the ANDA filers $7.0 million."

88. Further, in Section 3.1, "License Grant," in the Settlement Agreement, Pacira granted to eVenus "a non-exclusive, worldwide, royalty-free license under the Licensed Patent…"

89. In the Settlement, therefore, Pacira relinquished 11 years of market exclusivity for Exparel, because eVenus could go to market in 2030 instead of at the expiration of the 495 patent in 2041, granted a free license to eVenus, and paid eVenus $7 million to account for its litigation cost savings, even as eVenus would have had those same costs to continue the litigation.

## VII. LOSS CAUSATION AND ECONOMIC LOSS

90. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Pacira's common stock and operated as a fraud or deceit on Class Period purchasers of Pacira' common stock by materially misleading the investing public. Later, Defendants' prior misrepresentations and fraudulent conduct became apparent to the market and the price of Pacira's common stock materially declined, as the prior artificial inflation came out of the price over time. As a result of their purchases of Pacira's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, i.e., damages under federal securities laws.

91. In particular, on August 9, 2024, Judge Arleo published her Opinion invalidating the 495 patent, and Pacira also announced this news in a press release. As a direct and proximate cause of this disclosure, the price of Pacira securities fell by over 47%.

92. These disclosures corrected Defendants' prior misstatements, among others, discussing the eVenus litigation or the upcoming trial, while failing to disclose that the claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent, and materially negatively affected Pacira's chances of prevailing in that trial.

## VIII. NEITHER THE PSLRA SAFE HARBOR NOR THE BESPEAKS CAUTION DOCTRINE APPLIES

93. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint. As alleged above, Defendants' liability stems from the fact that they provided investors with information and opinions about the eVenus litigation while at the same time failing to disclose that the claim construction ruling had materially weakened the protections afforded to Pacira by the 495 patent, and materially negatively affected Pacira's chances of prevailing in that trial

94. To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

95. Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Pacira who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## IX. PLAINTIFF'S CLASS ACTION ALLEGATIONS

96. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's common stock publicly traded on NASDAQ during the Class Period, and who were damaged thereby ("Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

97. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

98. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

99. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

100. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

101. To establish reliance on a class wide-basis, Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;
- as a public issuer, the Company filed periodic public reports;
- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and
- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

102. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

103. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

104. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## X. COUNTS

### COUNT I

### For Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 Against All Defendants

105. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

106. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

107. During the Class Period, in violation of Rule 10b-5(b), Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

108. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

109. Defendants acted with scienter in that they knew or recklessly disregarded that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or

documents would be issued or disseminated to the investing public; and knowingly or recklessly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

110. The Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

111. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

112. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they

would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

113. As a direct and proximate result of Defendants' wrongful conduct alleged herein, Plaintiff and other members of the Class suffered damages in an amount to be established at trial.

114. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and SEC Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT II

### Form Violations of Section 20(a) of the Exchange Act Against the Individual Defendants

115. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

116. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's false financial statements.

117. As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

118. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class

Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

119. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## XI. PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of itself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating Lead Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## XII. JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 21, 2025

**THE ROSEN LAW FIRM, P.A.**

By: *Gonen Haklay*
Gonen Haklay
Jacob A. Goldberg *(pro hac vice pending)*
101 Greenwood Avenue, Suite 440
Philadelphia, PA 19046
Telephone: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com
Email: ghaklay@rosenlegal.com

*Counsel for Lead Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2025, I electronically filed the foregoing ***Amended Class Action Complaint for Violations of the Federal Securities Laws*** with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

**THE ROSEN LAW FIRM, P.A.**

By: /s/ *Gonen Haklay*

Gonen Haklay
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: ghaklay@rosenlegal.com