NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LEANDRO ALVAREZ, Individually and on behalf of all others similarly situated, | : : : | Civil Action No. 25-00322 (SRC) |
| Plaintiff, | : : | OPINION |
| v. | : : | |
| PACIRA BIOSCIENCES, INC., DAVID STACK, FRANK D. LEE, ANTHONY MOLLOY, and CHARLES A. REINHART III, | : : : : | |
| Defendants. | | |

**CHESLER, District Judge**

      This matter comes before the Court on a Motion to Dismiss submitted by Defendants Pacira Biosciences, Inc., David Stack, Frank D. Lee, Anthony Molloy, and Charles A. Reinhart III's ("Defendants") Motion to Dismiss the Amended Class Action Complaint (the "Motion") (Dkt. No. 27). Plaintiff filed opposition to the Motion. (Dkt. No. 33). Defendants filed a reply in further support of the Motion. (Dkt. No. 37). For the reasons set forth below, Defendants' Motion is **GRANTED** and Plaintiff's Amended Class Action Complaint is **DISMISSED** with prejudice.

## I.      PROCEDURAL HISTORY

      On January 13, 2025, Plaintiff filed a Class Action Complaint against Defendants. (Dkt. No. 1). Plaintiff filed an Amended Class Action Complaint on July 21, 2025. (Dkt. No. 17 ("ACAC")). On September 19, 2025, Defendants filed the instant Motion to Dismiss the Amended Class Action Complaint. (Dkt. No. 27 ("Mot.")). Plaintiff filed opposition on

November 3, 2025.   (Dkt. No. 33 ("Opp. Br.")).   Defendants filed a reply in further support of

the Motion on December 5, 2025.   (Dkt. No. 37 ("Reply")).

Through their Motion, Defendants seek dismissal of Plaintiff's Amended Class Action

Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and argue

that the Amended Class Action Complaint also fails to satisfy Rule 9(b)'s heightened pleading

requirements.

## II.    FACTUAL BACKGROUND

The underlying securities class action arises from Defendant Pacira BioSciences, Inc.'s

public statements concerning patent litigation related to its product, EXPAREL (bupivacaine

liposome injectable suspension).   (ACAC ¶ 22).   Pacira is a pharmaceutical company focused on

non-opioid pain management therapies.   *Id.*   EXPAREL is its primary product and, during the

relevant period, accounted for approximately 80% of Pacira's revenues.   *Id.* ¶¶ 23-24.   Pacira

holds patents covering specific formulations and manufacturing processes, including the '495

Patent for large-scale production of EXPAREL (the "'495 Patent"), which was listed in the FDA's

Orange Book and scheduled to expire in 2041.   *Id.* ¶¶ 26, 33.

In October 2021, eVenus Pharmaceutical Laboratories, Inc. submitted an Abbreviated New

Drug Application ("ANDA") to the FDA with a Paragraph IV certification seeking approval to

market a generic version of EXPAREL prior to the expiration of the '495 Patent.   *Id.* ¶ 27.   Pacira

responded by filing patent infringement actions against eVenus and related entities in the United

States District Court for the District of New Jersey.   *Id.* ¶ 28.   These filings triggered an automatic

30-month stay of FDA approval for the proposed generic products.   *Id.* ¶ 37.   In its first lawsuit

(the "2021 Lawsuit"), Pacira alleged that eVenus had violated Pacira's '495 Patent and sought an

injunction to prevent eVenus from manufacturing, using, or commercializing generic EXPAREL. *Id.* ¶ 28.   In its second lawsuit (the "2022 Lawsuit"), Pacira sought an order preventing eVenus from developing a generic version of EXPAREL at different doses.   *Id.* ¶ 34.

On March 9, 2023, Judge Madeline Cox Arleo held a Markman, or claim construction, hearing to decide the scope and meaning of specific phrases in the '495 Patent upon which the parties were unable to agree.   *Id.* ¶ 42.   In June 2023, Judge Arleo issued a claim construction ruling that rejected Pacira's proposed interpretations of certain key patent terms.   *Id.* ¶¶ 43-44. According to the Amended Complaint, this ruling materially weakened Pacira's ability to defend the validity of the '495 Patent at trial, particularly with respect to challenges based on obviousness and anticipation.   *Id.* ¶ 45.

During the period following the June 2023 claim construction ruling and continuing through early 2024, Pacira and several of its senior executives made public statements in earnings calls, SEC filings, analyst discussions, and press releases regarding the ongoing patent litigation. *Id.* ¶¶ 46, 48, 51, 54, 57, 60, 63, 65, 67, 68, 71, 75.   These statements included expressions of confidence in Pacira's patent position, assertions that Pacira did not view generic competition as a material threat, and representations that Pacira was unable to predict the outcome of the litigation. *Id.*

The patent case concerning the '495 Patent proceeded to a bench trial in February 2024. *Id.* ¶ 79.   On August 9, 2024, Judge Arleo issued a decision holding that the '495 Patent was invalid on grounds of obviousness and anticipation.   *Id.*   Pacira publicly disclosed the adverse ruling in a press release issued the same day.   *Id.* ¶ 82.   Following this disclosure, Pacira's stock price declined from a closing price of $22.36 per share on August 8, 2024, to a closing price of

$11.70 on August 9, 2024.  *Id.* ¶ 83.

Plaintiff, on behalf of a putative class of purchasers of Pacira common stock during the relevant period, filed suit, alleging that Defendants' statements regarding the patent litigation were materially false or misleading because they failed to disclose the significance of the June 2023 construction ruling and its impact on Pacira's likelihood of prevailing in the patent litigation.

The Amended Class Action Complaint asserts two causes of action: (1) a claim under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 against all Defendants, and (2) a claim under Section 20(a) of the Exchange Act against the individual Defendants. Defendants now move to dismiss all counts of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

## III.    LEGAL STANDARD

### A. Rule 12(b)(6)

To withstand a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory statements couched as factual allegations.  *See id.*  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The issue before the

4

Court on a Rule 12(b)(6) motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *Id.* at 1426. The Court, however, may properly consider documents that form the basis of a claim and documents that are "integral to or explicitly relied upon in the complaint." *Id.* (citations omitted).

### B. Rule 9(b)

Because Plaintiff alleges fraud, Plaintiff's claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To satisfy this requirement, a plaintiff may plead the "date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (internal citations omitted), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557. "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*

This heightened pleading requirement gives "defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d at 1418. "Plaintiffs must accompany their legal theory with factual allegations that make

their theoretically viable claim plausible" because "boilerplate and conclusory allegations will not suffice." *Id.*

### C. Private Securities Litigation Reform Act (PSLRA)

In addition to Rule 9(b), private securities fraud actions are subject to the heightened pleading standards imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Under the PSLRA, a plaintiff alleging a material misrepresentation or omission must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

To plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). A strong inference of scienter is one that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

When evaluating scienter under the PSLRA, courts must consider the complaint in its entirety, as well as documents incorporated by reference, and weigh both culpable and non-culpable explanations for the defendants' conduct. *Id.* at 322–23.

### D. Section 20(a)

To state a claim for control-person liability under Section 20(a) of the Exchange Act, a plaintiff must allege: (1) a primary violation of the federal securities laws by a controlled person; and (2) control of the primary violator by the defendant. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006). Because Section 20(a) liability is derivative, a plaintiff's failure to plead a primary violation under Section 10(b) and Rule 10b-5 requires dismissal of the

Section 20(a) claim as well.

## IV.    MOTION TO DISMISS

### A. Section 10(b) and Rule 10b-5

Plaintiff brings a claim under Section 10(b) and Rule 10b-5, which is subject to the pleading requirements of Rule 12(b)(6), Rule 9(b) and the PSLRA.  The Court addresses each required element in turn.

#### a. Alleged Material Misrepresentations and Omissions

Defendants argue that Plaintiff fails to plead any actionable misrepresentations or omissions and that the Section 10(b) claim should be dismissed under Rule 12(b)(6), Rule 9(b), and the PSLRA.  Mot. at 12-18.  Defendants contend that the challenged statements concerning Pacira's patent litigation and the strength of its position throughout are not actionable as they are merely expressions of corporate optimism or opinion, or were accurate descriptions of the ongoing risk of litigation.  *Id.* at 13-15.

Defendants maintain that Pacira consistently disclosed the existence of the patent litigation, uncertainty regarding its outcome, and the possibility of an adverse ruling, including in its Forms 10-Q and other public filings.  *Id.* at 14-15.    According to Defendants, these disclosures negate any inference that investors were somehow misled or that Defendants concealed material information from their investors.  *Id.* at 15.   Defendants further argue that relevant securities laws do not oblige Defendants to disclose or characterize the status of pending litigation developments, including claim construction rulings, or to predict the outcome of pending patent disputes.  *Id.* at 15-16.   They contend that the claim construction ruling did not render any prior statements false when they were made, particularly where Defendants repeatedly cautioned that litigation outcomes

were uncertain and subject to judicial determination. *Id.* Defendants also argue that any of their statements expressing confidence in Pacira's patent position or minimizing the threat of generic competition were merely non-actionable opinions or puffery. *Id.* at 16-17. Absent well-pleaded allegations that Defendant did not genuinely believe those opinions at the time they were expressed, Defendants contend that such statements cannot support a securities fraud claim. *Id.* at 17; *see Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186-87 (2015).

Finally, Defendants argue that Plaintiff's theory based on fraud by omission fails because Defendants had no duty to disclose every fact that Plaintiff now contends was material, particularly where the allegedly omitted information, namely, the claim construction ruling, was publicly available through court filings and was not a final resolution to the patent litigation. Mot. at 17-18. Defendants emphasize that securities laws do not require issuers to provide running commentary on litigation developments or to draw legal conclusions for investors. *Id.*; *see City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 168-70 (3d Cir. 2014).

Plaintiff argues that Defendant Pacira made materially false and misleading regarding the status and strength of Pacira's patent litigation, particularly after Judge Arleo's June 6, 2023 claim construction ruling concerning the '495 Patent. Opp. Br. at 6-9. According to Plaintiff, Defendants' public statements expressing confidence in Pacira's patent position and downplaying the risk of generic competition were misleading, and exceeded mere optimism by affirmatively reassuring investors that the '495 Patent faced no meaningful threat from its generic competitors. *Id.* at 7-8. Plaintiff contends that these statements were misleading because Defendants allegedly

knew that the claim construction ruling adopted the generic competitor's proposed construction and foreclosed Pacira's infringement theories.  *Id.* at 8-10.

Under Plaintiff's theory, Defendants violated securities law by failing to make any mention of the adverse claim construction ruling in their public disclosures to investors and failing to disclose that the claim construction ruling substantially undermined their likelihood of success in the litigation.  *Id.*  Plaintiff further argues that Defendants' repeated public disclosures stating that they was "unable to predict the outcome" of the litigation were misleading half-truths because Defendants allegedly possessed information demonstrating that the outcome would clearly be to their detriment following the claim construction ruling.  *Id.* at 10-12.

Plaintiff's Section 10(b) claims rests on whether Defendants made any actionable material misrepresentations or omissions.   After reviewing the Amended Complaint, the Court concludes that Plaintiff has failed to plausibly allege that the challenged statements were false or misleading when they were made.

As a threshold matter, the majority of the challenged statements concern Defendants' assessments of the ongoing patent litigation, including expressions of confidence in Pacira's patent position and statements that Pacira was "unable to predict the outcome" of the litigation.

For example, in its Form 10-Q for Q2 2023, filed on August 2, 2023 – the first quarterly filing following the claim construction opinion – Pacira provided a disclosure regarding the pending patent litigation against eVenus, and stated, "[t]hese litigations are in their early stages, and [Pacira] is unable to predict their outcome at this time."   Mot. Ex. 4 at 27-28.

A Barclays report published "key takeaways" from a fireside chat with Pacira's CEO, David Stack, and Chief Strategy Officer, Ron Ellis. *Id.* Ex. 3 at 3. The report states as follows: "[Pacira's] confidence in durability of Exparel franchise (& protection from GX Threat) stems from: 1) Strong IP portfolio, consisting of 8 orange book patents currently; 2) A complex approval & manufacturing process, as seen by definitive targets outlined by the FDA that would have to made for how a generic multi-vesicular liposome would make its way to the marketplace. As such, the company does not see any threat from the P4 filer, especially since this filer is only addressing the first 2 patents on Exparel and would need to work through all patents to successfully bring a generic Exparel to market." *Id.*

In a February 29, 2024, earnings call, Anthony Molly, Pacira's Chief Legal and Compliance Officer, in discussing the patent lawsuits, stated that he is "confident" in Pacira's legal position and stated that, "we believe that we have a strong legal case and that eVenus is infringing on our patents." *Id.* Ex. 7 at 13. The same call began with the following disclaimer from Susan Mesco, Head of Investor Relations: "Before we begin, let me remind you that this call will include forward-looking statements based on current expectations. Such statements represent our judgment as of today and may involve risks and uncertainties." *Id.* at 4.

Courts have consistently held that such statements may constitute opinions or forward-looking assessments regarding legal proceedings that are inherently uncertain. *See City of Edinburgh*, 754 F.3d at 168-170. Under *Omnicare*, any such statement is actionable under Section 10(b) only if it is misleading in light of the information available to the defendant at the

time it was made i.e. only if the speaker did not genuinely believe them at the time, or omitted facts that would render the opinion misleading. *Omnicare, Inc.*, 575 U.S. at 186-87.

Plaintiff does not plausibly allege facts supporting an inference that Defendants disbelieved the statements when they were made. Rather, Plaintiff's theory rests on its contention that the claim construction ruling completely undermined Pacira's patent position such that Defendants' continued expressions of confidence or uncertainty regarding the ultimate outcome of the case were necessarily misleading. Plaintiff's argument incorrectly presumes that an adverse ruling in the claim construction hearing, issued during the interim of the lawsuit, is equal to the final outcome of the patent case. Securities laws do not require issuers like Defendants to characterize interim rulings or to concede defeat before a court has issued a ruling on the actual issue in the case. *See In re Sanofi Sec. Litig.*, 87 F. Sipp. 3d 510, (S.D.N.Y.), aff'd, 816 F.3d 199 (2d Cir. 2016).

Further, Defendants' statements did not create a duty to disclose the claim construction ruling. While issuers may not omit material facts necessary to make affirmative statements not misleading, they are not obligated to disclose every development in pending litigation or to provide legal analysis of all potential impacts of the same. *See City of Edinburgh*, 754 F.3d at 168-170. Here, Defendants repeatedly disclosed the existence of the eVenus litigation, the challenges to the '495 patent, and the uncertainty of its outcome. Plaintiff has not plausibly alleged that those disclosures were rendered misleading by the omission of the claim construction ruling.

Plaintiff's reliance on statements minimizing the threat of generic competition is similarly misplaced. Viewed in context, those statements reflect corporate optimism, not guarantees of

11

success or any factual representations that entry by a generic competitor was completely unfeasible. Such statements are similarly inactionable absent allegations that Defendants knew they were false when they were made, which Plaintiff has not made. *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 538 (3d Cir. 1999). The Court is satisfied that Defendants' statements are non-actionable forward looking assessments or expressions of corporate optimism, and that Defendants' disclosures adequately apprised investors of the pending litigation and potential risks arising from the same.

Finally, Plaintiff's fraud by omission theory is further undermined by its own allegations that the claim construction ruling was publicly available through court filings. Plaintiff's characterization of the opinion as "unpublished" is misleading; the opinion was readily available to the public. Although not submitted for publication, the Court takes judicial notice that the opinion was available on both WestLaw and LexisNexis. *See Pacira Pharms., Inc. v. eVenus Pharms. Lab'ys, Inc.*, No. CV 21-19829, 2023 WL 3841559 (D.N.J. June 6, 2023); *Pacira Pharms., Inc. v. eVenus Pharms. Labs., Inc.*, 2023 U.S. Dist. LEXIS 98048. The Court finds it inconceivable that Defendants could conceal a public opinion. While public availability alone does not automatically defeat a securities claim, Plaintiff has not plausibly alleged that Defendants' disclosures were rendered misleading by failing to highlight or interpret a ruling issued in the interim and that did not resolve the litigation. *See City of Edinburgh*, 754 F.3d at 168-70.

Because Plaintiff has failed to plead an actionable misrepresentation or omission with the particularity required by Rule 9(b) and the PSLRA, the Section 10(b) claim must be dismissed.

### b. Materiality

Defendants argue that Plaintiff fails to plausibly allege materiality because the alleged omission i.e. the claim construction ruling did not significantly alter the total mix of information available to investors.   Defendants emphasize that Pacira consistently disclosed the existence of the patent litigation and the uncertainty of the outcome in such litigation.   According to Defendants, investors were therefore aware of the precise risk that later materialized when the patent was invalidated.   Mot. at 18-21.   Defendants further contend that interim developments in a pending litigation with no final resolution to the case are not per se material.   Defendants argue that reasonable investors understand that claim construction is one step in the multiple stages of a patent dispute and adverse results in a claim construction hearing are not necessarily conclusive of the final result.   *Id.* at 19-20.   Defendants contend that Plaintiff's theory improperly alleges fraud by hindsight.   *Id.* at 21.

Plaintiff contends that the omitted information was material because EXPAREL constituted the majority of Defendants' revenue and depended on the continued validity of the '495 Patent.   Opp. Br. at 12-13.   Plaintiff argues that the materiality of the alleged omission is further confirmed by the market's reaction when Defendants disclosed the adverse patent ruling on August 9, 2024, at which point Pacira's stock price declined by more than 47% in a single trading day.   *Id.* at 13-14.   Plaintiff maintains that this price drop demonstrated that the omitted information significantly altered the total mix of information available to investors.   *Id.* at 14.

To plead materiality, Plaintiff must allege facts showing a substantial likelihood that the omitted information would have been viewed by a reasonable investor as significantly altering the total mix of information available.   *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

13

Although materiality is often a fact-intensive inquiry, dismissal is appropriate where the alleged omission is so obviously unimportant that reasonable minds could not differ.   *Id.* at 450.

Here, Plaintiff has not plausibly alleged that omission of the claim construction ruling significantly altered the total mix of information available to investors.   Pacira repeatedly disclosed the existence of the EXPAREL patent litigation and the possibility of an adverse outcome.   Those disclosures adequately placed investors on notice of the exact risk that would later materialize when the patent was invalidated.   Further, Plaintiff's reliance on the stock-price decline is misplaced; the market's reaction followed the August 2024 final opinion that invalidated the patent, *not* the June 2023 claim construction opinion.   Plaintiff's theory appears largely to rest on hindsight, which is insufficient to prove materiality.

### c.  Scienter

Plaintiff argues that the Amended Complaint pleads a strong inference of scienter because Defendants allegedly knew of the June 6, 2023 claim construction ruling, understood its purportedly devastating effect on Pacira's position in its patent case, and nevertheless continued to reassure investors regarding the strength of Pacira's litigation prospects.   Opp. Br. at 15-18. Plaintiff emphasizes that scienter may be inferred from: (1) the importance of EXPAREL to Pacira's business (*Id.* at 16); (2) Defendant's senior executive roles and direct involvement in investor communications (*Id.* at 16-17); (3) Defendant's access to and knowledge of the claim construction ruling (*Id.* at 17); and (4) the magnitude of the alleged risk posed by generic competition if the '495 Patent were invalidated (*Id.* at 17-18).   Plaintiff argues that, at minimum, Defendants' conduct amounted to severe recklessness under the PSLRA.   *Id.* at 18.

Even if Plaintiff had plausibly alleged materiality and falsity, dismissal is still warranted

because Plaintiff fails to adequately plead scienter.   Plaintiff must allege "particulari[zed] facts giving rise to a strong inference" of scienter.   15 U.S.C. § 78u-4(b)(2)(A).   Scienter means "a mental state embracing intent to deceive, manipulate, or defraud," as opposed to negligence or even gross negligence.   *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 242 (3d Cir. 2013).   And to qualify as "strong" under the PSLRA, the "inference of scienter" as to each individual must be "more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."   *Tellabs*, 551 U.S. at 314.   Plaintiff primarily relies on Defendants' knowledge of the claim construction ruling and the importance of EXPAREL to Pacira's business, however, as explained, supra, Plaintiff had access to all the same information as the claim construction opinion was available to the public regardless of whether Defendants included it in their disclosures to investors.   Further, the more compelling explanation for Defendants' conduct is that they remained optimistic about their defenses in the patent litigation and exercised business judgment when choosing how to communicate with their investors regarding a legal process that is uncertain by its very nature.   *See Dang v. Amarin Corp. plc*, 750 F.Supp.3d 431, 462 (D.N.J. 2024) (finding that defendant's statements about the strength of its patent and position at trial, as well as its confidence in the results expected in litigation, were non-actionable opinions).

These non-culpable inferences defeat Plaintiff's allegations of scienter under *Tellabs*, as well.

**B. Section 20(a)**

Because Plaintiff has not adequately pleaded a predicate Section 10(b) violation, the Court finds that the derivative Section 20(a) claim for control-person liability also fails as a matter of

law.  *Williams v. Globus Medical, Inc.*, 869 F.3d 235, 246 (3d Cir. 2017).

**V.      CONCLUSION**

      For the foregoing reasons, Defendants' Motion to Dismiss the Amended Class Action Complaint is **GRANTED**.   Because amendment would be futile – any amended pleading would fail to state a claim upon which relief could be granted – the Court dismisses the Amended Class Action Complaint with prejudice and without leave to replead.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

      An appropriate Order accompanies this Opinion.

                                           /s/ Stanley R. Chesler

                                      THE HON. STANLEY R. CHESLER

                                      UNITED STATES DISTRICT JUDGE

Dated: February 6, 2026